**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

YOGA DEMOCRACY OF AZ LLC, an Arizona limited liability company,

Plaintiff,

v.

GAMBIT MEDIA, LLC, a Delaware limited liability company; and RYAN LEHRER, an individual,

Defendants.
___________________________________/

CASE NO. 1:26-cv-26928

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Yoga Democracy of AZ LLC ("Yoga Democracy" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendants Gambit Media LLC ("Gambit Media") and Ryan Lehrer ("Lehrer") and alleges as follows. Plaintiff alleges matters concerning itself and its own acts on personal knowledge. Plaintiff alleges all other matters on information and belief where so stated, based on information presently available and subject to evidentiary support after a reasonable opportunity for investigation and discovery.

## I. NATURE OF THE ACTION

**1.** This action arises from Defendants' provision of digital-marketing services under the name "Gambit Digital" and Gambit Media's later public filing of the parties' confidential May 4, 2022 Settlement Agreement. Plaintiff alleges that, before Plaintiff entered the October 2020 Contract and made the payments challenged in Count I, Defendants represented the legal identity and Florida presence of the business providing the services. Plaintiff seeks actual damages caused by that representation under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §

501.201 et seq. ("FDUTPA"), and damages for Gambit Media's alleged breach of the Settlement Agreement's confidentiality covenant.

**2.** Plaintiff's contract claim is based on Gambit Media's October 19, 2023 public filing of the Settlement Agreement. Plaintiff does not seek review, modification, or avoidance of any judgment or order entered in the California lawsuit action, and does not seek to relitigate any issue actually and necessarily determined there.

## II. PARTIES

**3.** Plaintiff Yoga Democracy of AZ LLC is an Arizona limited liability company whose principal place of business is at 7600 Majorca Place, Suite 4047, Orlando, Florida 32819. Plaintiff's members are Holly A. Cannon and George Cannon, each a natural person. Holly A. Cannon is domiciled in and is a citizen of Florida. George Cannon is domiciled in and is a citizen of Indiana. Accordingly, Plaintiff is a citizen of Florida and Indiana.

**4.** Defendant Gambit Media LLC is a Delaware limited liability company. The address it used in its dealings with Plaintiff was 3911 Concord Pike #8030, SMB 3849, Wilmington, Delaware 19803. On information and belief, Gambit Media's members are Ryan Lehrer and Danielle Lehrer, each a natural person. Ryan Lehrer is a citizen of Colorado, as alleged in paragraph 5. Danielle Lehrer is domiciled in and is a citizen of Colorado. Accordingly, Gambit Media is a citizen of Colorado.

**5.** Defendant Ryan Lehrer is a natural person who is domiciled in Denver, Colorado, and is a citizen of Colorado. Lehrer publicly states that he lives in Denver, Colorado.

## III. JURISDICTION AND VENUE

**6.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Florida and Indiana. Gambit Media is a citizen of each state of which any of its

members is a citizen, as alleged in paragraph 4, and Lehrer is a citizen of Colorado. Complete diversity exists because no Defendant, and no member of Gambit Media, is a citizen of Florida or Indiana. The amount in controversy exceeds $75,000, exclusive of interest and costs.

**7.** This Court has personal jurisdiction over Gambit Media under Fla. Stat. § 48.193(1)(a)1 and 2 because the tortious act that directly gives rise to Plaintiff's claims, including the relevant solicitation, communication, contracting, performance, or payment facts occurred, originate or were otherwise executed in Florida. Those suit-related contacts were purposefully directed to Florida, and the exercise of jurisdiction comports with due process.

**8.** This Court has personal jurisdiction over Lehrer under Fla. Stat. § 48.193(1)(a)1 and 2 because he personally performed the acts that are being complained of here in Florida or purposefully directed to Florida in his individual capacity.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida, including Defendants' Florida-directed solicitation and communications with Plaintiff, Plaintiff's receipt of those communications in Florida, and other suit-related conduct alleged herein.

## IV. GENERAL ALLEGATIONS

### A. The Parties' Relationship

**10.** On October 4, 2020, Plaintiff entered into a written agreement for digital marketing services with a business identified in the agreement only as "Gambit Digital" (the "October 2020 Contract"). A true and correct copy is attached as Exhibit A.

**11.** From December 2020 through May 2022, Plaintiff received invoices bearing the name "Gambit Digital" through an Intuit QuickBooks account that identified "Gambit Media."

The invoices listed 7950 W. Sunset Boulevard, Los Angeles, California 90046, and Lehrer signed them as "CEO, Gambit Digital."

**12.** On May 4, 2022, Plaintiff and Gambit Media executed a written Settlement Agreement (the "Settlement Agreement"). The complete Settlement Agreement is not attached to this public pleading. If submission of the unredacted agreement becomes necessary, Plaintiff will first seek leave to file it under seal under S.D. Fla. L.R. 5.4 and will not publicly file the unredacted agreement unless authorized by the Court.

**13.** Paragraph 7 of the Settlement Agreement provides that Plaintiff, Gambit Media, and their respective counsel shall not disclose any material term of the agreement to any third party, subject only to an exception permitting each party to disclose the terms to its investors, insurers, insurance brokers, accountants, and attorneys. Paragraph 7 further provides that, if a court of competent jurisdiction requires submission or disclosure of the agreement or any of its material terms, the parties shall take all reasonable steps to make the submission under seal or otherwise to preserve the confidentiality of its material terms.

**14.** The Settlement Agreement is governed by California law. It contains no forum-selection, arbitration, or dispute-resolution clause and no notice or cure provision applicable to a breach by Gambit Media. The confidentiality obligation in paragraph 7 is unconditional, no exception authorizes an unsealed public filing, and the release does not encompass a later breach of the Settlement Agreement.

**B. Defendants' Use of the Name "Gambit Digital"**

**15.** Florida Department of State records reflect that Gambit Digital LLC, Florida Document No. L23000342350, was organized on July 19, 2023, with a principal address of 3400 Shipping Avenue, Miami, Florida 33133, and Lehrer identified as an authorized member. The

Department administratively dissolved the entity on September 27, 2024, after it failed to file an annual report, and the records reviewed by Plaintiff do not reflect reinstatement. Under Fla. Stat. § 605.0714(5), an administratively dissolved limited liability company continues to exist for the limited purpose of winding up its activities and affairs.

**16.** A search of the Florida Department of State's fictitious-name records conducted on September 10, 2026 disclosed no registration for "Gambit Digital" by Gambit Media, by Lehrer, or by any other person. Searches of the Delaware Division of Corporations and the United States Patent and Trademark Office records conducted on September 10, 2026 likewise disclosed no registration of the name. Plaintiff does not allege that nonregistration alone invalidates a contract or act; Fla. Stat. § 865.09(9)(b) provides otherwise.

**17.** As of September 10, 2026, gambitdigital.com solicited marketing clients, described a "100% in-house" team, advertised partner status with Meta and Google, and stated in its footer: "©2024 All Rights Reserved / Gambit Digital Established In Miami." The website did not identify a legal entity, entity designation, or physical address. Lehrer and Gambit Media operate or control the website: the invoices Gambit Media issued to Plaintiff from December 2020 through May 2022 listed the contact address ryan@gambitdigital.com and were signed by Lehrer as "CEO, Gambit Digital," and Lehrer publicly identifies himself as the founder and chief executive officer of the business the website advertises. Plaintiff relies on this current material to identify the persons and entity operating the website, not to establish what Plaintiff saw before contracting in 2020.

**18.** As of September 10, 2026, Lehrer's public professional profile identified him as "Founder & CEO @ Gambit Digital" and stated that the business had generated revenue "for Brands Since 2020." As of the same date, his public social-media profile identified him as "CEO of Gambit Digital."

**19.** Defendants used "Gambit Digital" on the October 2020 Contract and invoices while the QuickBooks account identified "Gambit Media."

**20.** In or about October 2020, before Plaintiff entered the October 2020 Contract, Plaintiff's chief executive officer, Jeffrey Cannon, viewed the website at gambitdigital.com, which displayed the "Gambit Digital" name and logo and wording identifying Gambit Digital as the vendor of the marketing services offered. On October 4, 2020, Plaintiff executed the October 2020 Contract through DocuSign. The October 2020 Contract prominently identifies the service provider as "Gambit Digital," including through the "Gambit Digital" name and logo displayed on the agreement, and its operative provisions state that Plaintiff engaged Gambit Digital to perform the contracted services. Plaintiff understood those representations to mean that the business providing the services, and the party to which Plaintiff owed payment, was Gambit Digital, and Plaintiff made the payments challenged in Count I because it understood that it held a contractual obligation to Gambit Digital. Between December 2, 2020 and September 19, 2022, Plaintiff made sixteen electronic payments in connection with the October 2020 Contract and the Settlement Agreement, totaling $79,893.56: thirteen payments totaling $65,893.56 between December 2, 2020 and December 2, 2021, before the Settlement Agreement; and three payments after the Settlement Agreement, of $8,000.00, $4,000.00, and $2,000.00, which posted to Plaintiff's bank account on May 12, July 25, and September 19, 2022, respectively. Plaintiff made no other payment to Defendants or to their counsel. The amounts Plaintiff paid directly did not exceed the market value of the services Plaintiff received.

**21.** Plaintiff seeks FDUTPA relief only for a payment made on or after September 11, 2022 and does not seek FDUTPA damages for payments made before that date.

22. After entry of the default judgment described in paragraph 26, Gambit Media, through its counsel, collected $302,023.45 from Plaintiff through enforcement of the judgment, as Gambit Media acknowledged in the memorandum described below. On August 17, 2026, Gambit Media's counsel served in the California action a Memorandum of Costs After Judgment, Acknowledgment of Credit, and Declaration of Accrued Interest (Judicial Council Form MC-012), a true and correct copy of which is attached as Exhibit B. In that memorandum, Gambit Media acknowledged total payments to date of $302,023.45, including returns on levy process and direct payments, and stated that it had applied $24,620.85 of those payments to accrued interest and $277,402.60 to judgment principal, including postjudgment costs; claimed total postjudgment costs of $202,253.61, consisting of $182,877.59 in previously allowed postjudgment costs and $19,376.02 in attorney fees incurred from March 24, 2026 through August 17, 2026; and declared that $79,884.69 in judgment principal and $3,624.43 in accrued interest remained due. Plaintiff alleges these facts as part of the parties' course of dealing and the economic consequences of the California judgment; Plaintiff does not seek in this action to review, modify, avoid, or recover the California judgment merely because amounts were collected in its enforcement.

**C. Gambit Media's Public Disclosure of the Settlement Agreement**

**23.** On October 19, 2023, Gambit Media filed a civil complaint against Plaintiff in the Superior Court of California, County of Los Angeles, Case No. 23STCV25604, and attached the Settlement Agreement to that complaint as an exhibit.

**24.** Gambit Media did not move to file the Settlement Agreement under seal, did not redact its material terms, and took no other reasonable step to preserve the confidentiality of those terms before placing the agreement in the public record. The docket of the California action reflects

no motion, application, or order to seal or redact any exhibit to the complaint filed October 19, 2023.

**25.** As a result, the material terms of the Settlement Agreement, including the settlement amount, payment schedule, and default provisions, became publicly accessible on October 19, 2023 and, so far as the docket reflects, remain so.

**26.** Plaintiff was served in the California action by substituted service, and Gambit Media filed the proof of service on November 6, 2023. Plaintiff did not file an answer or cross-complaint; the court entered Plaintiff's default and, on February 20, 2024, entered a default judgment. The court denied Plaintiff's subsequent motion to set aside the default and default judgment on October 28, 2025. Because Plaintiff did not file an answer, Cal. Civ. Proc. Code § 426.30(b)(2) does not bar this claim as an omitted compulsory cross-complaint. Plaintiff does not seek to relitigate any issue actually and necessarily determined by the default judgment.

**27.** Plaintiff has performed the confidentiality obligations imposed on it by paragraph 7 and has not disclosed the material terms of the Settlement Agreement to any third party except as permitted by that paragraph.

**D. Conditions Precedent**

**28.** The Settlement Agreement imposes no notice or cure requirement as a condition of an action by Plaintiff for Gambit Media's breach; its only notice and cure provision, paragraph 4, governs a default by Plaintiff. All conditions precedent to this action have been performed, have occurred, or have been waived.

## V. CLAIMS FOR RELIEF

### COUNT I — VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 ET SEQ.
### (Against Gambit Media LLC and Ryan Lehrer)

**29.** Plaintiff incorporates paragraphs 3 through 5, 10 and 11, and 15 through 22 above as though fully set forth in this Count.

**30.** Plaintiff is a person aggrieved by a violation of FDUTPA within the meaning of Fla. Stat. § 501.211(1), and a person who has suffered a loss as a result of a violation of FDUTPA within the meaning of Fla. Stat. § 501.211(2).

**31**. Defendants' solicitation and provision of marketing services, and their invoicing and collection of fees for those services, constitute "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

**32.** Before Plaintiff entered the October 2020 Contract or made the payments challenged in this Count, Lehrer represented to Plaintiff in or about October 2020, by telephone and by email, that he owned an incorporated business based in Miami known as Gambit Digital. The representation was misleading because Gambit Digital was not incorporated at the time the representation was made; no entity named Gambit Digital was organized until Gambit Digital LLC was organized on July 19, 2023. Plaintiff received and reasonably understood the representation to mean that Gambit Digital was an incorporated business, owned by Lehrer and based in Miami, that would provide the contracted services and to which Plaintiff would owe payment, and it was likely to mislead a reasonable consumer in the same circumstances. Defendants' failure to register a fictitious name is evidence of the surrounding circumstances but is not, standing alone, the deceptive act or the source of Plaintiff's damages.

**33.** Lehrer is individually liable because he personally made the representation alleged in paragraph 32 and knew it was misleading because no such entity existed at the time he made it.

34. As a direct result of the deceptive representation alleged in paragraph 32, Plaintiff suffered actual damages in an amount to be established through discovery and proved at trial, measured as permitted under FDUTPA. Plaintiff does not seek as FDUTPA damages the $302,023.45 collected through enforcement of the California judgment merely because those amounts were collected pursuant to that judgment.

**35.** Plaintiff is entitled to actual damages under Fla. Stat. § 501.211(2) and reasonable attorneys' fees and costs under Fla. Stat. § 501.2105.

WHEREFORE, Plaintiff demands judgment against Gambit Media LLC and Ryan Lehrer, jointly and severally, for actual damages, reasonable attorneys' fees and costs under Fla. Stat. § 501.2105, and such further relief as the Court deems just.

**COUNT II — BREACH OF CONTRACT (SETTLEMENT AGREEMENT ¶ 7)**
**(Against Gambit Media LLC)**

**36.** Plaintiff incorporates paragraphs 3 through 5, 12 through 14, and 23 through 28 above as though fully set forth in this Count.

**37.** The Settlement Agreement is a valid and binding contract between Plaintiff and Gambit Media, governed by California law under its paragraph 13.

**38.** Plaintiff performed the confidentiality obligations imposed on it by paragraph 7. Gambit Media's confidentiality obligation under paragraph 7 is independent of every other covenant in the Settlement Agreement, is not conditioned on Plaintiff's payment or other performance, and is subject to no exception permitting an unsealed public filing.

**39.** Gambit Media breached paragraph 7 on October 19, 2023 by disclosing the Settlement Agreement and its material terms to third parties, including the public, when it attached the agreement to its publicly filed complaint in the California action, and, to the extent any submission of the agreement to that court was required, by failing to take any reasonable step to

make the submission under seal or otherwise to preserve the confidentiality of its material terms, as alleged in paragraphs 23 through 25.

40. Gambit Media's breach violated Plaintiff's contractual right to confidentiality. As a direct and proximate result of that breach, Plaintiff suffered damages in an amount to be established through discovery and at trial. Alternatively, and irrespective of Plaintiff's ability to establish appreciable monetary detriment resulting from the disclosure, Plaintiff is entitled to nominal damages under California Civil Code § 3360 for Gambit Media's breach of its contractual confidentiality obligation.

WHEREFORE, Plaintiff demands judgment against Gambit Media LLC for actual or nominal damages for breach of contract, prejudgment interest as allowed by law, taxable costs, and such further relief as the Court deems just.

**COUNT III — TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**
(Against Gambit Media LLC)

41. Plaintiff realleges paragraphs 3 through 5 and the factual allegations concerning Gambit Media's post-judgment enforcement activity as though fully set forth herein.

42. At all material times, Plaintiff maintained an existing and ongoing business relationship with Coastal Acquiring Secure Holdings, LLC ("Coastal"), pursuant to which Coastal provided merchant and payment-processing services to Plaintiff, processed Plaintiff's customer transactions, received and transmitted funds belonging to Plaintiff, and maintained settlement and related accounts for Plaintiff's benefit.

43. Gambit Media had actual knowledge of Plaintiff's ongoing business relationship with Coastal. Among other things, Gambit Media specifically identified Coastal as Plaintiff's payment processor and sought information concerning Plaintiff's merchant-processing accounts, reserves,

settlement accounts, payment-processing activities, agreements with Coastal, communications with Coastal, and funds processed or held by Coastal.

44. Beginning no later than August 2026, Gambit Media intentionally directed collection and enforcement activity toward Coastal and Plaintiff's processing relationship with Coastal, with knowledge that Coastal was then actively processing Plaintiff's customer transactions and receiving, holding, and remitting Plaintiff's funds.

45. On August 14, 2026, Gambit Media caused a subpoena to be served upon Coastal demanding extensive information concerning the ongoing Plaintiff-Coastal relationship, including the agreements governing that relationship, the status of Plaintiff's accounts, balances and reserves, communications between Plaintiff and Coastal, banking information, settlement instructions, and payment-processing and disbursement information. The subpoena required production on September 4, 2026.

46. As a direct consequence of Gambit Media's conduct directed toward Coastal and the Plaintiff-Coastal relationship, Coastal became aware of Gambit Media's judgment against Plaintiff and the related enforcement proceedings and, on or about September 4, 2026, began implementing termination of its merchant-processing relationship with Plaintiff.

47. Coastal subsequently confirmed that its termination decision followed its discovery of the judgment and related enforcement proceedings and that the previously undisclosed judgment, the related enforcement proceedings, and the resulting credit and chargeback exposure were material to its decision to terminate its processing relationship with Plaintiff.

48. Upon information and belief, Gambit Media's contacts and communications with Coastal concerning Plaintiff and the Plaintiff-Coastal processing relationship, including conduct beyond the mere service of legal process, were undertaken intentionally and with the purpose of

disrupting that relationship or with knowledge that disruption or termination of the relationship was substantially certain to result. The complete nature and extent of those communications and contacts are presently within the possession of Gambit Media, Coastal, and their respective representatives and will be established through discovery.

49. Gambit Media's interference with the Plaintiff-Coastal relationship was intentional and unjustified. Gambit Media was a stranger to that merchant-processing relationship and possessed no contractual, supervisory, ownership, or other financial interest in the performance or continuation of that relationship.

50. As a direct and proximate result of Gambit Media's interference, Coastal terminated its processing relationship with Plaintiff, approximately $14,000 in Plaintiff's processing proceeds were temporarily withheld, Plaintiff lost the continued benefit of its existing payment-processing relationship, and Plaintiff incurred additional losses and expenses associated with the disruption and replacement of its merchant-processing services.

51. Plaintiff has suffered damages in an amount to be established through discovery and proven at trial.

WHEREFORE, Plaintiff Yoga Democracy of AZ LLC demands judgment against Defendant Gambit Media LLC for compensatory damages, prejudgment interest as permitted by law, taxable costs, and such further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Yoga Democracy of AZ LLC respectfully requests that the Court enter judgment in its favor and against Defendants and award the relief requested inCounts I, II, and III, together with prejudgment and post-judgment interest as allowed by law, taxable costs, and such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable as of right.

Dated: October 1, 2026.

Respectfully submitted,

/s/ J. Wil Morris
J. Wil Morris, Esquire
Morris Legal, LLC
2800 Biscayne Boulevard, Suite 530
Miami, Florida 33137
Telephone: (305) 444-3437
Facsimile: (305) 444-3457
Email: Wilm@MorrisLegalFla.com
Florida Bar No. 069493

By: /s/ J. Wil Morris
J. Wil Morris, Esquire
Florida Bar No. 069493